IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GARY LEWIS,                                                            CV 05-6038-AA

          Plaintiff,                                OPINION AND ORDER

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

          Defendant.

_____

       KATHRYN TASSINARI
       DREW L. JOHNSON
       1700 Valley River Drive, First Floor
       Eugene, OR  97401

           Attorneys for Plaintiff

       KARIN J. IMMERGUT
       United States Attorney
       District of Oregon

Page -1- FINDINGS AND RECOMMENDATION

NEIL EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

L. JAMALA EDWARDS
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

Attorneys for Defendant

AIKEN, Judge:

## BACKGROUND

Plaintiff, Gary Lewis (Lewis), brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). 42 U.S.C. § 1383(c)(3). This court has jurisdiction under 42 U.S.C. § 405(g).

Lewis applied for DIB on July 28, 2002, alleging disability beginning September 5, 2001, due to bipolar disorder and hepatitis-C. He was 54 years old at the time the Administrative Law Judge (ALJ) determined that he was not disabled. Lewis attended high school through the twelfth grade, but did not receive a high school diploma. He has past work as a materials handler, janitor and construction worker.

On appeal to this court, Lewis claims the ALJ erred by failing to provide legally sufficient reasons to discredit Lewis' own testimony, and the opinion of Phillip R. Taggart, M.D. For the reasons that follow, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

**STANDARD OF REVIEW**

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

**DISABILITY ANALYSIS**

**I.     Drug Addiction/ Alcoholism Analysis**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The

claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1512. Each step is potentially dispositive.

An otherwise disabled individual is not entitled to disability benefits under the Act if drug addiction or alcoholism (DAA) is a contributing factor material to the determination that the individual is disabled. 42 U.S.C. §§ 423(d)(2)(c), 1382c(a)(3)(J). If the ALJ, acting by delegation of the Commissioner, determines that DAA is a material factor, the ALJ must perform the sequential evaluation a second time, separating out the effect of DAA on the claimant's ability to work. See Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001).

The "key factor" to whether DAA is a "contributing factor material to the determination of disability is whether [the ALJ] would still find [the claimant] disabled if [the claimant] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b), 416.935(b). If the Commissioner determines that absent DAA a claimant's remaining limitations would not be disabling, she will find DAA to be a "contributing factor material to the determination of disability," and thus, that the claimant is not disabled. Id.

## II.   The ALJ's Findings

In this case the ALJ determined that DAA was a contributing factor material to the determination of whether Lewis was disabled.

At step one, the ALJ found Lewis had not engaged in substantial gainful activity since his alleged disability onset date. See 20 C.F.R. § 404.1520(b).

At step two, the ALJ found that Lewis had "severe" bi-polar disorder, and polysubstance abuse dependence, but after separating out the effects of DAA, the ALJ found no "severe" mental or physical impairments remained. See 20 C.F.R. § 404.1520(c).

At step three, the ALJ found that Lewis met the criteria of Listed Impairment 12.09, based on his polysubstance abuse disorder. However, after separating out the effects of DAA, the ALJ found that his remaining impairments did not meet or equal the criteria of any Listed Impairment considered so severe as to automatically constitute a disability. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

The ALJ assessed Lewis with the residual functional capacity (RFC) to perform all levels of work once the effects of DAA were separated out, with the following limitations: only simple routine tasks; no interaction with the public; occasional interaction with co-workers (and never close interaction), and no teamwork. See 20 C.F.R. §§ 404.1520(e), 404.1545, 404.1567.

At step four, the ALJ found that absent DAA, Lewis remained capable of performing his past relevant work as a janitor. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f). In the alternative, the ALJ determined at step five that Lewis could perform a significant number of jobs in the national economy, such as yard laborer and hand packager. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## DISCUSSION

**I.  The ALJ provided legally sufficient reasons to discredit Lewis' testimony.**

Lewis contends the ALJ failed to give legally sufficient reasons to find his testimony less than fully credible. The ALJ is not required to credit every allegation of disabling pain or else disability benefits would be available on demand. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). However, if the ALJ determines that a claimant is not credible, he must give specific reasons, supported by substantial evidence in the record, indicating that he has not arbitrarily

discredited a claimant's testimony. See <u>Thomas v. Barnhart</u>, 278 F. 3d 947, 958-59 (9th Cir. 2002).

In assessing a claimant's credibility, the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. See <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ gave three principle reasons for discounting Lewis' reports, each supported by substantial record evidence. The first reason was that the objective medical evidence did not support the disabling symptoms Lewis claimed to be plagued by, such as hand tremors, migraine headaches, fatigue and short-term memory loss.

With respect to the allegation of disabling hand tremors, the ALJ found that Lewis first complained of them in May, 2004, more than two and a half years after his alleged disability onset date. The only medical source who observed the tremor was a neurologist, who Lewis visited once. He found Lewis to have a moderate endpoint tremor on finger-nose-finger testing bilaterally, but no tremor at rest, and normal motor, sensory, coordination and reflex findings. He concluded that Lewis had "a tremor with characteristics of an essential tremor...undoubtedly aggravated by lithium therapy." The neurologist recommended switching medications. However, at the time of the hearing Lewis indicated that he did not follow this advice, as he still

took 1200 milligrams of Lithium a day. He also stated that he believed his tremor to be caused by unverified lead poisoning during childhood.

The ALJ made two additional observations related to the tremor – that Lewis' handwriting on social security worksheets was legible, and that Lewis wouldn't be able to fish regularly, as he claims to, if he had a hand tremor. Lewis' attempt to undermine the ALJ's findings on this subject is unavailing. He argues that his penmanship is *not* good, and at any rate he filled out the worksheets before he had the tremor. Yet, Lewis' handwriting was not the chief reason the ALJ cited to discredit his allegation of a disabling hand tremor- the lack of obejctive medical evidence was.

Notably, Lewis does not contest the ALJ's other findings in support of his conclusion that the objective medical evidence does not match Lewis' subjective reports. Nevertheless, it bears mentioning that the ALJ found limited complaints of fatigue in the medical record, and amble evidence that Lewis' hepatitis-C was under good control. Further, the ALJ did not identify any evidence that Lewis sought help for migraine headaches . Finally, Lewis' scores on a psychiatric evaluation did not support finding that he had short-term memory loss.

The second leading reason the ALJ gave for discrediting Lewis was his prior inconsistent statements and actions. For instance, after his alleged onset of disability Lewis collected unemployment benefits, premised on an assertion that he could work if work became available. There is also evidence in the record indicating that Lewis may have been secretly working for himself. On two different occasions, in December, 2002, and May, 2004, Lewis told Dr. Taggart that he and his girlfriend were developing a business, or "closet industry" involving his girlfriend's artwork.

Lewis argues that his case should be remanded if there is a "genuine concern that he has been working in a business." I disagree. It was reasonable for the ALJ to question Lewis' credibility based on his inconsistent postures regarding his ability to work. Whether he was actually successful in developing a business is not relevant to the determination that Lewis was less than fully candid about this essential element of disability. Notably, the ALJ gave Lewis the benefit of the doubt, at step one, that he did not engage in substantial gainful activity since his alleged onset of disability.

Lewis also made inconsistent statements about his drug and alcohol abuse. In September, 2002, he told an examining psychiatrist that he had stopped drinking one year prior to the exam, but later in that same exam he "let it slip" that he had taken a "bunch of downers" with beer about four or five months prior. The examining psychiatrist expressed concerns that Lewis may have been intoxicated during the examination as well. When Lewis was admitted to a substance abuse rehabilitation center in December, 2002, he contradicted himself a third time, stating that he had smoked marijuana every day for the last 40 years.

Finally, the ALJ's third reason for discrediting Lewis was his unexplained failure to seek the care of a mental health specialist for his alleged bipolar disorder. The ALJ found little mention of psychiatric issues in the record, and no mental health treatment, apart from the 200 milligrams of Zoloft per day prescribed by his primary care physician, Dr. Taggart. Lewis argues that contrary to the ALJ's conclusion, "Dr. Taggart is competent to address [his] mental disorder." This statement serves only to bolster the ALJ's finding that Lewis' alleged bipolar disorder was adequately managed with minimal medication, and thus, that Lewis was less than candid when he claimed that he still "loses it" once a day, becomes violent, hears voices, and

can't "do things" due to depression. Significantly, Lewis does not contest the ALJ's finding that DAA was material to his disability claim, and that if Lewis did not use drugs and alcohol he would have no severe mental limitations whatsoever.

In sum, I find the ALJ's reasons for finding Lewis less than fully credible were clear and convincing.

## II.  The ALJ provided legally sufficient reasons to discredit Dr. Taggart.

The record indicates that Phillip Taggart, M.D., an internal medicine specialist, began seeing Lewis for general medical care in April, 2001, approximately five months before Lewis allegedly became disabled. In a letter addressed to Lewis, dated June 23, 2004, Dr. Taggart wrote the following:

> It is my medical opinion that your bipolar disorder, hepatitis C, hypertension and depressive neurosis make it impossible for you to work. You have been seen by a neurologist recently, who can add additional information concerning this opinion. I feel you are unable to work and should be disabled for an indefinite period.

Lewis argues the ALJ wrongly rejected this opinion. I disagree.

The relative weight afforded the opinion of a physician depends upon his or her opportunity to observe and to get to know the patient as an individual. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ must provide "clear and convincing reasons," supported by substantial evidence in the record, for rejecting the opinion of a claimant's physician when it is not contradicted by another doctor, and "specific and legitimate" reasons when it is. See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600-601 (9th Cir. 1999).

First, Dr. Taggart's opinion took the form of an administrative finding properly reserved to the Commissioner. See SSR 96-5p. Disability has both a medical and vocational component.

Page -9- OPINION AND ORDER

See 20 C.F.R. § 404.1560. Because a medical source does not have the expertise to comment on the vocational component of disability, a statement by a medical source that a person is unable to work is not accorded much weight. 20 C.F.R. § 416.927(e)(1). The ALJ must consider medical opinions about a claimant's condition and functional limitations, along with all other evidence in the record, to determine whether a claimant is disabled under the Social Security Act.

Second, the ALJ found no objective medical findings in Dr. Taggart's treatment records to support his opinion. To the contrary, Dr. Taggart did not observe Lewis' alleged tremor, and found his hepatitis-C to be stable. Dr. Taggart's notes indicate that Lewis was "pleasant" and "doing well," and they make only passing reference to mental limitation. For instance, in December, 2002, Dr. Taggart wrote that Lewis was "agitated and hyperactive." Yet, as the ALJ pointed out, Lewis was still abusing controlled substances on this date. Although Dr. Taggart should not be faulted for not having the benefit of the entire record, as did the ALJ, it was nevertheless reasonable to discount his opinion that Lewis was disabled by an independent mental impairment, as opposed to the effects of DAA.

Third, the ALJ found Dr. Taggart's opinion that Lewis could not work was inconsistent with his own chart notes, where he wrote on at least two occasions that Lewis was developing a private business from home.

In sum, it is my finding that the ALJ reasonably rejected Dr. Taggart's opinion.

## CONCLUSION

Based on the foregoing, the Commissioner's final decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this  9  day of January, 2006

                                                        /s/ Ann Aiken
                                                        Ann L. Aiken
                                                        United States District Judge